## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENERAL GROWTH PROPERTIES, INC., a Delaware corporation, | ) ) ) ) |
| Plaintiff, | ) ) ) Case No. _____ |
| v. | ) ) |
| GORDON GLENN, JOHN McLAUGHLIN, and THOMAS FITZPATRICK, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

General Growth Properties, Inc. ("General Growth"), as and for its Complaint against Gordon Glenn, John McLaughlin and Thomas Fitzpatrick (the "Executives"), states as follows:

## SUMMARY OF CLAIM

1. The Executives have initiated an arbitration proceeding against General Growth seeking severance payments and other benefits from General Growth, as the successor by merger to the Rouse Company ("Rouse"), which was the Executives' former employer.

2. Thomas P. Gies ("Gies") and his law firm, Crowell and Moring, represent the Executives in the arbitration. Incredibly, however, for numerous years before Rouse merged into General Growth, Gies and Crowell and Moring represented Rouse concerning the very issues that are the subject of the arbitration. Despite this patent conflict of interest, Gies and Crowell and Moring refuse to withdraw as counsel for the Executives. Consequently, General Growth seeks a declaratory judgment that the Executives continued retention of Gies and Crowell and Moring as their counsel in the arbitration is unlawful.

## PARTIES

3. General Growth is a Delaware corporation with its principal place of business in Illinois. General Growth is a publicly-traded real estate investment trust ("REIT") principally engaged in the buying, selling, ownership and management of shopping malls, shopping centers and other retail space. In or around November of 2004, General Growth acquired Rouse via merger ("Merger"). Rouse, like General Growth, was a publicly-traded REIT engaged in, among other things, the management and ownership of retail space.

4. The Executives are former Rouse management employees, whose positions were eliminated as a result of the Merger. The Executives are residents of Maryland.

## JURISDICTION AND VENUE

5. Jurisdiction is proper, pursuant to 28 U.S.C. § 1332(a)(1), because the matter in controversy between General Growth and each Executive is in excess of $75,000, and complete diversity exists.

6. Jurisdiction is also proper under 28 U.S.C. § 1331, because, as part of their arbitration claims against General Growth, the Executives claim entitlement to certain benefits under Section 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA").

7. Further, a request that opposing counsel in an arbitration proceeding be disqualified must be presented to a court whose rules of professional conduct govern the attorneys involved in the arbitration.

8. There is an actual case and controversy between General Growth and the Executives within the jurisdiction of this Court and, therefore, this action is properly brought pursuant to 28 U.S.C. § 2201(a).

9.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a), because the District of Columbia is the venue in which the arbitration is taking place. Venue is also proper in this District because Crowell & Moring is a multi-national law firm headquartered in the District of Columbia, and Gies works at the headquarters office and is a member of the District of Columbia Bar.

### STATEMENT OF THE CLAIM

**The Arbitration Dispute**

10.     Each Executive had an Executive Agreement with Rouse. The Executive Agreements provided for various parachute payments to be made to, and other benefits conferred on, the Executives when their positions were eliminated as a result of the Merger. To date, the Executives have collectively received approximately $17,000,000 in parachute payments and other benefits under the Executive Agreements.

11.     Despite their receipt of these payments and benefits, the Executives now claim to be entitled to, *inter alia*, additional payments under ERISA and the Rouse Separation Policy ("Separation Policy"). General Growth denies the Executives are entitled to any additional payments or benefits.

12.     Section 9 of the Executive Agreements contains an arbitration clause providing that any disputes arising under the Executive Agreements shall be resolved through arbitration pursuant to the Center for Public Resources ("CPR") Rules for Non-Administered Arbitration.

13.     On April 25, 2005, as provided for by the Executive Agreements, Gies and Crowell & Moring served General Growth with Notices of Arbitration on behalf of the Executives. Copies of the Executives' Notices of Arbitration are attached as Exhibits A through C, respectively. The

arbitration panel has determined that the arbitration proceedings will take place in the District of Columbia.

14. In the Notices of Arbitration, the Executives claim to be entitled to "severance payments under the Rouse Separation Policy." However, the Separation Policy was properly amended ("Separation Policy Amendment") to exclude from its coverage the Executives and certain other Rouse employees with individual agreements such as the Executive Agreements.

15. Among other things, General Growth maintains that this Amendment effectively extinguished any right the Executives may have to severance payments under the Separation Policy. The Executives claim that the Separation Policy Amendment was ineffective and an interference with their rights under ERISA.

**Gies and Crowell & Moring Previously**
**Represented Rouse On Substantially Related Matters**

16. Until shortly before the Merger in November 2004, Gies and Crowell & Moring represented Rouse: (a) in drafting, amending and construing the Separation Policy; (b) in connection with other executive terminations; and (c) generally in advising Rouse with respect to employee terminations and ERISA matters.

17. Entries from Crowell & Moring's invoices to Rouse through June of 2004 -- only months before the Merger -- include the following descriptions:

- [Research] potential challenges to termination of plan participants under ERISA Section 510 (9/30/01 Invoice);

- Review legal theories re assignment of contracts and ERISA issues (4/30/02 Invoice);

- Review corporate law treatises re assignment of executive employment agreements (4/30/02 Invoice);

- Prepare for and attend meeting with Mr. Glenn, Ms. Hart and Mr. Gies regarding employee benefit coverage for terminating Executives (9/30/02 Invoice);

- Research on ERISA implications of severance pay awards (8/26/03 Invoice);

- Teleconference with Mr. Glenn re appropriate response to Taylor issue; possible amendment to severance plan and related matters; review language of severance plan (8/26/03 Invoice);

- Teleconference with Mr. Glenn re scope of 'cause' language in severance policy and related matters (8/26/03 Invoice);

- Draft proposed language for separations policy (4/28/04 Invoice);

- Research whether an employer may amend [an] ERISA plan to potentially eliminate benefits for employees shortly before the employees are to be outsourced or terminated; edit proposed amendments to Separations policy (4/28/04 Invoice); and

- Review severance policy and amendments (6/21/04 Invoice).

18.    During the course of Crowell & Moring's prior representation of Rouse, it offered advice regarding the construction of the Separation Policy and became privy to the company's goals with regards to the Separation Policy and its interpretation thereof, as well as any potential "loopholes" the company may have wanted to close by way of amendment.

19.    Further, while representing Rouse in 2004, Crowell & Moring researched whether an employer may amend an ERISA plan to potentially eliminate benefits for employees shortly before the employees are to be outsourced or terminated. This exact issue is a major part of the present dispute: General Growth claims that the Separation Policy Amendment effectively bars the Executives from making a claim for benefits thereunder, while the Executives claim that the Amendment was invalid and ineffective.

20. Despite the foregoing, neither the Executives, Gies nor anyone at Crowell & Moring advised General Growth of Crowell & Moring's representation of Rouse before the Executives initiated the arbitration.

**Crowell & Moring Refuses To Withdraw As Counsel For The Executives**

21. After the Notices of Arbitration were served, General Growth discovered the nature of Crowell & Moring's prior representation of Rouse, and its counsel immediately sent a letter to Gies requesting that he and his firm withdraw from their representation of the Executives in connection with the pending arbitration because it was "substantially related" to their previous representation of Rouse and, thus, barred under District of Columbia ("D.C.") Rule of Professional Conduct 1.9.

22. D.C. Rule of Professional Conduct 1.9 is adopted by this Court pursuant to LCvR 83.15(a) and states as follows:

Rule 1.9 Conflict of Interest: Former client.

A lawyer who has formerly represented a client in a matter shall not thereafter:

> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

23. Gies responded by letter on May 31, 2005, refusing to withdraw.

24. In his May 31 letter, Gies conceded that his firm "advised [Rouse] as to questions of interpretation of the separation policy in circumstances involving potential claims by former employees" and "advised [Rouse] regarding certain language that could be added to the separation policy."

25. Despite these admissions, Gies' letter claimed that because Crowell & Moring did not work on the Executive Agreements *per se*, Crowell & Moring's prior representation of Rouse and its present representation of the Executives were not "substantially related."

26. Gies' letter did not, however, explain how the Executives' claim in their Notices of Arbitration for "severance payments under the Rouse Separation Policy" was not "substantially related" to Crowell & Moring's representation of Rouse in the drafting and interpretation of that very Separation Policy.

## **COUNT I**

27. By reason of the foregoing, Crowell & Moring and Gies' prior representation of Rouse is "substantially related" to their current representation of the Executives. Under such circumstances, D.C. Rule of Professional Conduct 1.9 prohibits Crowell & Moring and Gies from representing the Executives in the pending arbitration.

28. An actual justiciable case and controversy exists between General Growth and the Executives concerning whether the Executives may continue to retain Crowell & Moring and Gies to represent them in the pending arbitration. The adverse legal interests between General Growth and the Executives are of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

29. Pursuant to 28 U.S.C. § 2201, this Court can and should resolve this controversy and determine whether Crowell & Moring and Gies may continue to represent the Executives.

WHEREFORE, General Growth requests that, pursuant to 28 U.S.C. § 2201, the Court enter judgment in favor of General Growth and against the Executives:

    (A) Declaring that, pursuant to D.C. Rule of Professional Conduct 1.9,

>   Crowell & Moring and Thomas P. Gies are disqualified from representing Thomas Fitzpatrick, Gordon Glenn and John McLaughlin in connection with the pending arbitration;

(B)  Granting General Growth its costs of suit; and

(C)  Granting General Growth such other and further relief as the Court deems just.

>   GENERAL GROWTH PROPERTIES, INC.
>
>   _____
>   By:  One of Its Attorneys

Alexander J. May (D.C. Bar # 454990)
BRASSEL & BALDWIN, P.A.
112 West Street
Annapolis, MD 21401
(410) 216-7900

Of Counsel:

Eric N. Macey
Vincent M. Roche
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900