UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| General Growth Properties, Inc.<br><br>    Plaintiff,<br>v.<br><br>Gordon Glenn, John McLaughlin<br>and Thomas Fitzpatrick,<br><br>    Defendants | Case No. 1:05CV01436 |

## Defendants' Motion Compel Arbitration and Dismiss Complaint

Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4, Defendants move to compel arbitration of the claim made in the Complaint and, as a consequence of such arbitration, dismiss this Complaint.

As discussed in the accompanying Memorandum in Support of Defendant's Motion to Compel Arbitration and Dismiss Complaint, the question raised in the Complaint – alleged grounds for disqualification of counsel in a pending arbitration – is subject to an arbitration agreement between the Parties. Arbitration has already begun regarding the substantive dispute between the Parties, and Defendants respectfully request that this Court compel Plaintiff to present its related disqualification claim to the arbitrators pursuant to the agreement between the Parties.

Respectfully submitted,

/s/ B. Cohen
Barry E. Cohen (D.C. Bar No. 180505)
Thomas P. Gies (D.C. Bar No. 94330)
Rebecca L. Springer (D.C. Bar No. 465982)
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Counsel for Defendants

August 15, 2005

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| General Growth Properties, Inc.<br><br>              Plaintiff,<br>v.<br><br>Gordon Glenn, John McLaughlin<br>and Thomas Fitzpatrick,<br><br>              Defendants | Case No. 1:05CV01436 |

**Memorandum in Support of Defendants' Motion to
Compel Arbitration and Dismiss Complaint**

Plaintiff General Growth Properties, Inc. ("GGP") filed its complaint solely to assert a claim that counsel for certain parties to a pending arbitration with GGP are subject to disqualification because of a conflict of interest. The claim is not meritorious. More importantly, however, the disqualification question is one to be decided in the pending arbitration. Accordingly, the Court should issue an order dismissing this litigation and compelling GGP to present its attorney disqualification claim, if it chooses to pursue it, in the pending arbitration.

- 1 -

FACTS

I.    <u>Background</u>

Defendants Gordon Glenn, John McLaughlin and Thomas Fitzpatrick were long-time executives of The Rouse Company ("Rouse"), a real estate development company headquartered in Columbia, Maryland. All three defendants were terminated as a result of a merger between Rouse and GGP in November 2004. *See* Complaint, ¶ 4

In May 2004, six months before the merger, each of the Defendants entered into identical Executive Agreements (the "Agreement") with Rouse. These Agreements established certain rights and responsibilities of both the Defendants and Rouse, as employees and employer, and established the benefits to which each Defendant would be entitled should there be a change in control of Rouse, such as a merger. *See* relevant excerpts of the Agreement, attached as Exh. 1. One such benefit provided under the Agreements is certain payments under Rouse's Separations Policy (the "Separations Policy"), which provides severance benefits for employees in certain situations.

The Agreement also contains a broad arbitration provision requiring arbitration of all disputes "arising out of or relating to" the Agreement. *See* Compl. ¶ 12. The arbitration provision (Section 9(b) of Exh. 1) reads as follows:

> Section 9(b) <u>Arbitration</u>. Subject to the rights of the Company pursuant to Section 12(d), any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof, which has not been resolved by nonbinding means as provided in Section 9(a) within 60 days of the initiation of such procedure, shall be finally settled by arbitration conducted expeditiously in accordance with the

Center for Public Resources, Inc., ("CPR") Rules for Non-Administered Arbitration of Business Disputes by three independent and impartial arbitrators, of whom each party shall appoint one, provided that if one party has requested the other to participate in a non-binding procedure and the other has failed to participate, the requesting party may initiate arbitration before the expiration of such period. Any such party shall be appointed from the CPR Panels of Neutrals. The arbitration shall be governed by the United States Arbitration Act and any judgment upon the award decided upon the arbitrators may be entered by any court having jurisdiction thereof. . . .

The Agreement also contains a provision addressing payment of expenses in the event of a dispute. It states:

Section 9(c) Expenses. The Company shall promptly pay or reimburse the Executive for all costs and expenses, including, without limitation, court costs and attorneys fees, incurred by the Executive as a result of any claim, action or proceeding (including, without limitation a claim action or proceeding by the Executive against the Company) arising out of or challenging the validity or enforceability of this Agreement or any provisions hereof or any other agreement or entitlement referred to herein. *Id.*

II. The Current Dispute

The roots of the underlying dispute that led to the pending arbitration between the parties arose prior to the Rouse/GGP merger in November 2004. During the merger negotiations between GGP and Rouse, GGP examined both the Separations Policy and the Agreements, and decided to attempt to revoke some of the benefits to which the executives were entitled under the Agreements. Accordingly, immediately after the merger agreement was signed, and shortly before the end of the last day of Defendants' employment with Rouse, GGP amended the Separations Policy to exclude certain individuals, including the Defendants, from being eligible for severance benefits upon termination.

Following GGP's refusal to provide Defendants with benefits they believed due under the Agreements, Defendants each commenced arbitrations against GGP pursuant to the arbitration provisions of their respective Agreements. Although Defendants' counsel, Crowell & Moring LLP, had been known to GGP for months before the arbitration was formally commenced, it was not until after arbitration had commenced that GGP informed the Defendants that it believed that Defendants' counsel should withdraw from their representation because of work the law firm had previously performed for Rouse. GGP further claimed Crowell & Moring's alleged disqualification as a basis for refusing to pay the Defendants' attorneys' fees as provided in the Agreements.

Defendants raised both the disqualification issue and the related refusal to pay attorneys' fees with the arbitration panel at the first opportunity to do so. *See* Exh. 2. GGP refused to agree to submit these disputes to the arbitration panel, and filed this lawsuit seeking relief from the Court.

ARGUMENT

FEDERAL LAW AND STRONG PUBLIC POLICY FAVORING ARBITRATION REQUIRE THAT PLAINTIFF'S DISQUALIFICATION CLAIM BE DISMISSED.

    A. The Parties Have entered Into a Written Agreement to Arbitrate Disputes under the Agreements.

It is well-established that arbitration is a favored method of conflict resolution, and that courts are, and should be, loathe to interfere with a mutually agreed upon arbitration process. Congress enacted the Federal Arbitration Act, 9

U.S.C. § 1, *et seq.*, to codify the strong public policy in favor of arbitration. As a result, courts have repeatedly upheld a presumption of arbitrability and have stated that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration". *Moses H Cone Hosp. v. Mercury Constr. Co.,* 460 U.S. 1, 24-25; *Nur v. K.F.C., USA, Inc.,* 142 F. Supp.2d, 48, 50 (D. D.C. 2001) (same).

Where a party asserts that a dispute is covered by an arbitration agreement, the role of a court is simply to analyze that agreement to determine: (1) whether it is valid and enforceable and, (2) whether the dispute at issue is within the scope of the agreement to arbitrate. *See Nelson v. Insignia/ESG, Inc.,* 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002) (citing *Nur*, 142 F. Supp. 2d at 50-51). In this case, the answer to the first question is clear, as GGP acknowledges that there is a valid and binding arbitration agreement between the parties. *See* Compl. ¶12. The arbitration proceeding, moreover, has already commenced and has not been challenged by GGP. *See* Compl. ¶ 12-13.

> B. GGP's Disqualification Claim is Included in the Parties' Agreement to Arbitrate.

The answer to the second question – does the scope of the arbitration agreement include GGP's disqualification issue – is also affirmative. The broad arbitration clause in each Agreement states that "<u>any</u> dispute arising out of or relating to this Agreement or the breach, termination or validity thereof . . . shall be finally settled by arbitration." (Emphasis added.) Moreover, the fact that the parties agreed to arbitrate under the auspices and rules of CPR, the Center for

Public Resources, means that even disputes concerning the existence and scope of the arbitration agreement are themselves subject to arbitration.[1]

The substantive dispute regarding benefits owed to Defendants by GGP arises under the Agreements and is already being arbitrated. In the presence of a broad arbitration clause, such as exists here, courts have long recognized that accompanying procedural issues are subject to arbitration as well. *See John Wiley & Sons, Inc., v. Livingston*, 376 U.S. 543, 557 (1964) ("once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Woodland Limited Partnership v. Wulff*, 2005 D.C. App Lexis 34, *13 (D.C. Ct. App. 2005) (issues incidental to a dispute covered

---

[1] CPR's Rules for the parties' pending arbitration include the following:

Rule 8: Challenges To The Jurisdiction Of The Tribunal

8.1 The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

8.2 The Tribunal shall have the power to determine the existence, validity or scope of the contract of which an arbitration clause forms a part. For the purposes of challenges to the jurisdiction of the Tribunal, the arbitration clause shall be considered as separable from any contract of which it forms a part.

8.3 Any challenges to the jurisdiction of the Tribunal, except challenges based on the award itself, shall be made not later than the notice of defense or, with respect to a counterclaim, the reply to the counterclaim; provided, however, that if a claim or counterclaim is later added or amended such a challenge may be made not later than the response to such claim or counterclaim.

*See* Exh. 3, relevant excerpts from the International Institute for Conflict Prevention and Resolution (formerly CPR) Rules for Non-Administered Arbitration.

by the arbitration agreement should be decided by the arbitrator); *Carter v. Cathedral Avenue Coop. Inc.*, 658 A 2d. 1047, 1050 (DC Ct. App. 1995) (the conditions for conducting the arbitration are decisions to be determined by the arbitrators). As the Supreme Court noted in *John Wiley & Sons*, if such procedural deference were not given to arbitrators, "reservation of procedural issues for the courts would . . . not only create the difficult task of separating related issues, but would also produce frequent duplication of effort." *Id.* at 558.

A dispute concerning the eligibility of a lawyer to represent a party in arbitration is obviously a procedural one, and there is no reason why it – like other procedural questions – should not be decided by the arbitral body the parties selected to decide their substantive dispute. GGP's claim that Crowell & Moring should be disqualified from representing the Defendants in the pending arbitration arises under District of Columbia Rule of Professional Conduct 1.9, and will require a determination of:

(1) whether GGP, as the acquirer of Rouse in a merger transaction, is a former client of Crowell & Moring and, if so,

(2) whether Crowell & Moring's former representation of Rouse is "substantially related" to the Executive Agreement dispute being arbitrated.[2]

---

[2] Rule of Professional Conduct 1.9 reads as follows: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

These determinations present no unusual questions of fact or law, and are not beyond the competence of the skilled arbitrators who constitute the arbitration panel hearing the dispute between the parties. There is no federal law or Constitutional component to these questions, as they arise entirely under District of Columbia professional ethics law, where a body of case law will aid the arbitrators in their decision.[3]

In the instant case, not only does the alleged disqualification arise out of Crowell & Moring's representation in the arbitration, but GGP has also used the alleged disqualification as a basis for refusing to pay the Defendants attorneys' fees as required by the Section 9(c) of the Agreement. The fee issue, which GGP does not and cannot assert is *not* subject to arbitration, is intertwined with the disqualification issue that Plaintiff has attempted to bring before this court. The arbitration panel will be required to address the disqualification claim in relation to Defendants' claim for fees under the Agreement – further reason why the question of disqualification should be decided in the context of the on-going arbitration.

Other courts which have considered the arbitrability of attorney disqualification issues have held them to be arbitrable. In *Canaan Venture Partners v. Saltzman*, 1996 Conn. Super LEXIS 245 (Conn. Sup. Ct. 1996), for example, the court rejected one party's motion to disqualify another party's counsel after the parties had commenced arbitration. Relying upon an arbitration clause

---

[3] *See, e.g., In Re Sofaer*, 728 A. 2d 625 (D.C. 1999).

virtually identical to the one before the Court in this case, calling for arbitration of "any dispute, controversy or claim arising out of, in connection with, or relating to this Agreement" the court ruled that the authority to decide the disqualification motion rested with the arbitrator. *See also Wuttembergischef Fire Ins. Co. v. Republic Ins. Co.*, No. 86 Civ. 2696-CSH (S.D.N.Y. 1986) ("Were I to [rule upon the disqualification request], this Court would interfere directly in a pending arbitration . . . . It is for the arbitrators to control their internal procedures"); *Hibbard Brown & Co. v. ABC Family Trust*, 1992 U.S. App. LEXIS 6469 (4th Cir. 1992) (upholding dismissal of disqualification motion and noting that "a decision on disqualification by the district court at this time could have the result of interfering with the arbitration proceedings"); and *Dyntel Corp. v. Ebner*, 120 F.3d 488 (4th Cir. 1997) (dismissing disqualification claim as litigation tactic and noting that issue could have been decided through arbitration).[4]

Another reason why the Complaint should be dismissed is that it is premature and, in fact, may never be eligible for judicial resolution. CPR Rule 8.1, quoted in note 1 above, provides that "The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to

---

[4] There are several state court decisions, including *Tekni-Plex Inc. v. Meyner and Landis*, 674 N.E. 2d 663 (N.Y. 1996); *Bidermann Industries Licensing v. Avmar N.V.*, 173 A.D. 2d 401 (N.Y. App. Div.) 1991; and *Croushore v. Buchanan Ingersoll*, 1996 WL 932086 (Pa. Com. Pl. 1996), which have chosen to decide disqualification disputes arising from an arbitration. But these decisions arose under unique factual circumstances and were not governed by the Federal Arbitration Act's strong public policy favoring arbitration. Thus, they should not serve as precedent for the Court's decision in this case.

the existence, <u>scope</u> or validity of the arbitration agreement." (Emphasis added.) In this litigation, GGP is impliedly asserting that the CPR arbitrators do not have jurisdiction to hear its request to disqualify Defendants' counsel. But the question of the arbitrators' authority to decide an issue related to a pending arbitration is itself arbitrable. In other words, under the arbitration rules agreed to by the parties, any dispute as to the scope of the authority of the arbitrators is to be brought for decision to the arbitrators. If the arbitrators decide that they have jurisdiction over the dispute, they then have the authority to decide it, to the exclusion of any other forum. If they determine that they do not have authority to decide the dispute, then – and only then – does the dispute become amenable to judicial resolution.

The Court should follow the sound reasoning of aforementioned case law and the provisions of the CPR rules, and reject GGP's effort to upset the orderly course of the pending arbitration by requesting judicial intervention for a matter – the disqualification claim – that is clearly subject to the parties' agreement to arbitrate. As this court recently observed, "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson*, 215 F. Supp. 2d at 150 (quoting <u>Green Tree Fin. Corp. - Alabama v. Randolph</u>, 531 U.S. 79, 91 (2000)). GGP can not satisfy that burden here.

## CONCLUSION

For the reasons presented above, Defendants respectfully request that the Court compel arbitration of the Plaintiff's attorney disqualification issue and dismiss Plaintiff's complaint.

Respectfully submitted,

Barry E. Cohen (D.C. Bar No. 180505)
Thomas P. Gies (D.C. Bar No. 943340)
Rebecca L. Springer (D.C. Bar No. 465982)
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Counsel for Defendants

August 15, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that on August 15, 2005 I caused Defendants' Motion to Dismiss and to Compel Arbitration to be served by first class mail, postage prepaid upon:

Alexander J. May
Brassel & Baldwin, P.A.
112 West Street
Annapolis, MD 21401

Eric N. Macey
Vincent M. Roche
Novack and Macey, LLP
100 N. Riverside Plaza
Chicago, IL 60606

_/Rebecca L. Springer/BLS_
Rebecca L. Springer