# EXHIBIT 1

EXECUTIVE AGREEMENT dated
May 18, 2004 (the "Effective Date") between
THE ROUSE COMPANY
(together with its subsidiaries and affiliates, the "Company")
and Thomas M. Fitzpatrick (the "Executive")

The Company and the Executive agree as follows:

SECTION 1. Definitions. As used in this Agreement:

(a) "Accrued Obligations" means the sum of the amounts described in Section 6(a)(i)(A) and clause (2) of Section 6(a)(ii).

(b) "Annual Base Salary" means the Executive's salary at a rate not less than the Executive's annualized salary in effect (i) immediately prior to the Operative Date, (ii) on the date that is six months prior to the Operative Date or (iii) as of any date after the Operative Date (whichever date results in the highest salary).

(c) "Annual Bonus" in any year means an amount that is not less than annual cash bonus that would be paid to the Executive with respect to such year assuming that the Executive and the Company satisfied all applicable performance at the "target," "satisfactory," "acceptable" or other similar level.

(d) "Board" means the Board of Directors of the Company.

(e) "Cause" means (i) the willful and continued failure of the Executive to perform substantially the Executive's duties owed to the Company after a written demand for substantial performance is delivered to the Executive which specifically identifies the nature of such non-performance (other than any such failure resulting from the Executive's incapacity due to physical or mental illness or any such actual or anticipated failure after the issuance of a Notice of Termination by the Executive for Good Reason pursuant to Section 5(d)), (ii) willful gross misconduct by the Executive that is significantly and demonstrably injurious to the Company, or (iii) the Executive in the course of his or her employment (x) is convicted of a felony or (y) willfully engages in a fraud that results in material harm to the Company. No act or omission on the part of the Executive shall be considered "willful" unless it is done or omitted in bad faith or without reasonable belief that the action or omission was in the best interests of the Company. For purposes of this Section 1(e), any act or failure to act based upon authority given pursuant to a resolution duly adopted by the Board or upon the instructions of the Board, the Company's Chief Executive Officer or other executive officer of the Company, or based upon the advice of counsel for the Company shall be conclusively presumed to be done, or omitted to be done, by the Executive in good faith and in the best interests of the Company. Notwithstanding the foregoing, the Executive shall not be deemed to have been terminated for Cause without (1) reasonable notice to the Executive setting forth the

210567

payments and benefits to which the Executive or the Executive's legal representatives shall be entitled hereunder shall be (i) timely payment of Accrued Obligations and (ii) provision by the Company of death benefits or disability benefits for termination due to death or Incapacity, respectively, in accordance with Sections 4(b)(iii) and 6(a)(vi) as in effect at the Operative Date or, if more favorable to the Executive, at the Executive's Date of Termination.

(c)   <u>Cause; Other than for Good Reason</u>. If the Executive's employment shall be terminated on or after the Operative Date for Cause, the sole payments and benefits to which the Executive shall be entitled hereunder shall be (x) the Executive's then Annual Base Salary through the Date of Termination and (y) Other Benefits, but in each case only to the extent unpaid as of the Date of Termination. If the Executive voluntarily terminates employment during the Term of this Agreement, excluding a termination for Good Reason on or after the Operative Date, the sole payments and benefits to which the Executive shall be entitled hereunder shall be the timely payment of Accrued Obligations and Other Benefits.

SECTION 7.   <u>Non-exclusivity of Rights</u>. Nothing in this Agreement shall prevent or limit the Executive's continuing or future participation in any plan, program, policy or practice provided by the Company and for which the Executive may qualify, nor, subject to Section 17(c), shall anything herein limit or otherwise affect such rights as the Executive may have under any contract or agreement with the Company. Amounts which are vested benefits or which the Executive is otherwise entitled to receive under any plan, policy, practice or program of, or any contract or agreement with, the Company at or subsequent to the Date of Termination shall be payable in accordance with such plan, policy, practice, program, contract or agreement except as explicitly modified by this Agreement.

SECTION 8.   <u>No Mitigation</u>. The Company agrees that, if the Executive's employment is terminated on or after the Operative Date and during the Term of this Agreement for any reason, the Executive is not required to seek other employment or to attempt in any way to reduce any amounts payable to the Executive hereunder. Further, the amount of any payment or benefit provided hereunder on or after the Operative Date shall not be reduced by any compensation earned by the Executive as the result of employment with another employer, by retirement benefits, by offset against any amount claimed to be owed by the Executive to the Company, or otherwise; provided that, notwithstanding the foregoing, the Company shall have the right to offset any amounts earned by the Executive in violation of Section 12 against any amounts otherwise due the Executive hereunder.

SECTION 9.   <u>Resolution of Disputes</u>.

(a)   <u>Negotiation</u>. Subject to the rights of the Company pursuant to Section 12(d), the parties shall attempt in good faith to resolve any dispute arising out of or

relating to this Agreement promptly by negotiations between the Executive and an executive officer of the Company or member of the Board as may be designated by the Board who has authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within 10 days after the effective date of such notice, the Executive and an executive officer of the Company shall meet at a mutually acceptable time and place within the Baltimore-Washington metropolitan area, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within 30 days of the disputing party's notice, or if the parties fail to meet within 10 days, either party may initiate arbitration of the controversy or claim as provided hereinafter. If a negotiator intends to be accompanied at a meeting by an attorney, the other negotiator shall be given at least three business days notice of such intention and may also be accompanied by an attorney. All negotiations pursuant to this Section 9(a) shall be treated as compromise and settlement negotiations for the purposes of the federal and state rules of evidence and procedure.

(b) <u>Arbitration</u>. Subject to the rights of the Company pursuant to Section 12(d), any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof, which has not been resolved by nonbinding means as provided in Section 9(a) within 60 days of the initiation of such procedure, shall be finally settled by arbitration conducted expeditiously in accordance with the Center for Public Resources, Inc. ("<u>CPR</u>") Rules for Non-Administered Arbitration of Business Disputes by three independent and impartial arbitrators, of whom each party shall appoint one, <u>provided</u> that if one party has requested the other to participate in a non-binding procedure and the other has failed to participate, the requesting party may initiate arbitration before the expiration of such period. Any such party shall be appointed from the CPR Panels of Neutrals. The arbitration shall be governed by the United States Arbitration Act and any judgment upon the award decided upon the arbitrators may be entered by any court having jurisdiction thereof. The arbitrators are not empowered to award damages in excess of compensatory damages and each party hereby irrevocably waives any damages in excess of compensatory damages. Each party hereby acknowledges that compensatory damages include (without limitation) any benefit or right of indemnification given by another party to the other under this Agreement.

(c) <u>Expenses</u>. The Company shall promptly pay or reimburse the Executive for all costs and expenses, including, without limitation, court costs and attorneys fees, incurred by the Executive as a result of any claim, action or proceeding (including, without limitation a claim action or proceeding by the Executive against the Company) arising out of, or challenging the validity or enforceability of, this Agreement or any provision hereof or any other agreement or entitlement referred to herein.

SECTION 10. <u>Certain Additional Payments by the Company</u>. Subject only to the next following paragraph, in the event that it shall be determined that any payment or

- 11 -

# EXHIBIT 2



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ■ p202 624-2500 ■ f202 628-5116

Thomas P. Gies
(202) 624-2690
tgies@crowell.com

July 1 2005

1220:rls
101517.0000001

**VIA FIRST CLASS MAIL**

C. Allen Foster, Esq.                   Marvin Johnson, Esq.
Greenberg Traurig, LLP                  1221 Smith Village Road
800 Connecticut Avenue, NW              Silver Spring, MD 20904
Suite 500
Washington, DC 200006

Re:  Thomas M. Fitzpatrick v. General Growth Properties Arbitration

Dear Messrs. Foster and Johnson:

I am writing to follow up on my letter of May 18, 2005, in the above-referenced matter.

Please let us know whether you have chosen a third arbitrator. Pursuant to CPR Rule 5.2, this selection was to have been made by June 8, 2005. We would like to get this matter resolved as soon as possible. Moreover, there are two preliminary matters that we wish to take up with the arbitration panel as soon as it is convened. The first involves the Respondent's refusal to pay attorneys fees incurred by Mr. Fitzpatrick. The second involves Respondent's contention that counsel for Mr. Fitzpatrick should be disqualified. We believe both of these matters should be resolved by the arbitration panel.

I look forward to hearing from you soon.

Sincerely,

Thomas P. Gies

Greenberg Traurig, LLP
July 1, 2005
Page 2

cc:   Eric N. Macey, Esq.
      Thomas M. Fitzpatrick



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

Thomas P. Gies
(202) 624-2690
tgies@crowell.com

July 1 2005

1220:rls
101517.0000001

**VIA FIRST CLASS MAIL**

C. Allen Foster, Esq.  
Greenberg Traurig, LLP  
800 Connecticut Avenue, NW  
Suite 500  
Washington, DC 200006

Marvin Johnson, Esq.  
1221 Smith Village Road  
Silver Spring, MD 20904

Re: <u>Gordon H. Glenn v. General Growth Properties Arbitration</u>

Dear Messrs. Foster and Johnson:

I am writing to follow up on my letter of May 18, 2005, in the above-referenced matter.

Please let us know whether you have chosen a third arbitrator. Pursuant to CPR Rule 5.2, this selection was to have been made by June 8, 2005. We would like to get this matter resolved as soon as possible. Moreover, there are two preliminary matters that we wish to take up with the arbitration panel as soon as it is convened. The first involves the Respondent's refusal to pay attorneys fees incurred by Mr. Glenn. The second involves Respondent's contention that counsel for Mr. Glenn should be disqualified. We believe both of these matters should be resolved by the arbitration panel.

I look forward to hearing from you soon.

Sincerely,

Tom Gies

Thomas P. Gies

Greenberg Traurig, LLP
July 1, 2005
Page 2

cc: Eric N. Macey, Esq.
    Gordon H. Glenn

Crowell & Moring LLP ▪ www.crowell.com ▪ Washington ▪ Irvine ▪ London ▪ Brussels



1001 Pennsylvania Avenue, NW, Washington, DC 20004-2595 ▪ p202 624-2500 ▪ f202 628-5116

**Thomas P. Gies**
(202) 624-2690
tgies@crowell.com

July 1 2005

1220:rls
101517.0000001

**VIA FIRST CLASS MAIL**

C. Allen Foster, Esq.  
Greenberg Traurig, LLP  
800 Connecticut Avenue, NW  
Suite 500  
Washington, DC 200006

Marvin Johnson, Esq.  
1221 Smith Village Road  
Silver Spring, MD 20904

Re:  <u>John G. McLaughlin v. General Growth Properties Arbitration</u>

Dear Messrs. Foster and Johnson:

I am writing to follow up on my letter of May 18, 2005, in the above-referenced matter.

Please let us know whether you have chosen a third arbitrator. Pursuant to CPR Rule 5.2, this selection was to have been made by June 8, 2005. We would like to get this matter resolved as soon as possible. Moreover, there are two preliminary matters that we wish to take up with the arbitration panel as soon as it is convened. The first involves the Respondent's refusal to pay attorneys fees incurred by Mr. McLaughlin. The second involves Respondent's contention that counsel for Mr. McLaughlin should be disqualified. We believe both of these matters should be resolved by the arbitration panel.

I look forward to hearing from you soon.

Sincerely,

Thomas P. Gies

Greenberg Traurig, LLP
July 1, 2005
Page 2

cc:  Eric N. Macey, Esq.
     John G. McLaughlin

# EXHIBIT 3

International Institute for Conflict Prevention and Resolution

# INTERNATIONAL INSTITUTE FOR CONFLICT PREVENTION AND RESOLUTION*
# RULES FOR NON-ADMINISTERED ARBITRATION
(Revised and Effective June 15, 2005)

* Formerly known as the CPR Institute for Dispute Resolution and The Center for Public Resources.

International Institute for Conflict Prevention and Resolution

7.10    In the event that an arbitrator fails to act or is *de jure* or *de facto* prevented from duly performing the functions of an arbitrator, the procedures provided in Rule 7.9 shall apply to the selection of a replacement. If the parties do not agree on whether the arbitrator has failed to act or is prevented from performing the functions of an arbitrator, either party may request CPR to make that determination forthwith.

7.11    If the sole arbitrator or the chair of the Tribunal is replaced, the successor shall decide the extent to which any hearings held previously shall be repeated. If any other arbitrator is replaced, the Tribunal in its discretion may require that some or all prior hearings be repeated.

**Rule 8: Challenges To The Jurisdiction Of The Tribunal**

8.1    The Tribunal shall have the power to hear and determine challenges to its jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

8.2    The Tribunal shall have the power to determine the existence, validity or scope of the contract of which an arbitration clause forms a part. For the purposes of challenges to the jurisdiction of the Tribunal, the arbitration clause shall be considered as separable from any contract of which it forms a part.

8.3    Any challenges to the jurisdiction of the Tribunal, except challenges based on the award itself, shall be made not later than the notice of defense or, with respect to a counterclaim, the reply to the counterclaim; provided, however, that if a claim or counterclaim is later added or amended such a challenge may be made not later than the response to such claim or counterclaim.

**C.    RULES WITH RESPECT TO THE CONDUCT OF THE ARBITRAL PROCEEDINGS**

**Rule 9: General Provisions**

9.1    Subject to these Rules, the Tribunal may conduct the arbitration in such manner as it shall deem appropriate. The chair shall be responsible for the organization of arbitral conferences and hearings and arrangements with respect to the functioning of the Tribunal.

9.2    The proceedings shall be conducted in an expeditious manner. The Tribunal is empowered to impose time limits it considers reasonable on each phase of the proceeding, including without limitation the time allotted to each party for presentation of its case and for rebuttal. In setting time limits, the Tribunal should bear in mind its obligation to manage the proceeding firmly in order to complete proceedings as economically and expeditiously as possible.

9.3    The Tribunal shall hold an initial pre-hearing conference for the planning and scheduling of the proceeding. Such conference shall be held promptly after the constitution of the Tribunal, unless the Tribunal is of the view that further submissions from the parties are appropriate prior to such conference. The objective of this conference shall be to discuss all elements of the arbitration with a view to planning for its future conduct. Matters to be considered in the initial pre-hearing conference may include, *inter alia*, the following: