IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GENERAL GROWTH PROPERTIES, INC., a Delaware corporation ) ) ) | |
| Plaintiff, ) ) | Case No. 1:05CV01436 |
| v. ) ) ) | Judge Ricardo M. Urbina |
| GORDON GLENN, JOHN McLAUGHLIN, and THOMAS FITZPATRICK ) ) ) ) | |
| Defendants. ) | |

**GENERAL GROWTH PROPERTIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT**

Plaintiff General Growth Properties, Inc. ("General Growth") submits this Memorandum in Opposition to Defendants Gordon Glenn, John McLaughlin, and Thomas Fitzpatrick's (the "Executives") Motion to Compel Arbitration and Dismiss Complaint.

## INTRODUCTION

General Growth instituted this action to prevent Crowell & Moring, LLP from representing the Executives in an arbitration only recently commenced in the District of Columbia ("D.C."). The arbitration concerns the Executives' rights to various payments under, *inter alia*, certain Executive Agreements and a company Separation Policy. (Compl. ¶¶ 11, 13.) The Executives are former employees of The Rouse Company ("Rouse"), whose positions were eliminated upon Rouse's merger with General Growth. (Id. ¶ 4.) Prior to Crowell & Moring's representation of the Executives, Crowell & Moring represented Rouse in drafting, amending and interpreting the very Separation Policy under which the Executives now claim to be entitled to payment. (Id. ¶ 16.) Immediately upon learning of the nature of Crowell & Moring's prior

representation of Rouse, and well before the arbitration panel ("Panel") was impaneled,[1] General Growth asked Crowell & Moring to withdraw from representing the Executives because its prior representation of Rouse and its present representation of the Executives are "substantially related" under D.C. Rule of Professional Conduct 1.9. (Id. ¶ 21.) Crowell & Moring refused. (Id. ¶ 23.) As a result, General Growth filed its Complaint, seeking to have Crowell & Moring disqualified from continuing to represent the Executives in the arbitration proceedings. The Complaint was filed <u>before</u> the Panel held its preliminary conference,[2] and the Panel has since stayed the arbitration proceedings pending this Court's resolution of the present dispute.[3]

General Growth does not dispute the validity of the arbitration clause in the Executive Agreements, and stands ready and willing to arbitrate the Executives' claims as to what, if anything, their Executive Agreements and the Separation Policy entitle them. Those issues, however, are not before this Court. The only dispute in this forum is whether General Growth's prior counsel (Crowell & Moring) can now represent the Executives. Because the arbitration clause in the Executive Agreements cannot plausibly be interpreted to encompass the dispute regarding Crowell & Moring's continued representation of the Executives, and because matters of attorney disqualification are within the exclusive realm of the courts, the Executives' motion to compel arbitration and dismiss General Growth's Complaint must be denied.

---

[1] <u>See</u> Mot. Ex. 2 (reflecting that, as of July 1, 2005, third neutral arbitrator had not yet been selected).

[2] The preliminary conference was held on July 22, 2005. (<u>See</u> Exhibit A (email from JAMS administrator to parties).)

[3] <u>See</u> Exhibit B (July 25, 2005 letter from Panel to parties).

## ARGUMENT

### I. The Disqualification Dispute Is Not Arbitrable

Numerous courts that have considered the arbitrability of disqualification disputes have concluded that, for two reasons, such disputes are not arbitrable. First, regardless of the breadth of a given arbitration clause, such clauses simply cannot be read to encompass disqualification disputes, which are entirely tangential and wholly unrelated to the contractual relationship between the parties. Second, because disqualification involves fundamental aspects of public policy and an application of a jurisdiction's Rules of Professional Conduct, disqualification complaints are within the exclusive jurisdiction of the courts.

#### A. The Arbitration Clause In The Executive Agreements Does Not Encompass The Disqualification Dispute

A party may not be compelled to arbitrate a dispute when it has never agreed to do so. In Ellsworth Assocs., Inc. v. U.S., 917 F. Supp. 841 (D.D.C. 1996), the court stated:

> It is elementary that parties to an arbitration agreement cannot be required to submit to arbitration any matter that they did not agree to that manner of dispute resolution. Moreover, a party who consents to the inclusion in a contract of a limited arbitration clause does not thereby waive his right to a judicial hearing on the merits of a dispute not encompassed within the ambit of the clause.

Id. at 845; see also Amtrak v. ExpressTrak, L.L.C., 330 F.3d 523, 529 (D.C. Cir. 2003) ("the FAA does not require parties to arbitrate when they have not agreed to do so.") (citations omitted); Lok Tio v. Wash. Hosp. Ctr., No. 04 C 0701(RMU), 2004 WL 2663149, at *2 (D.D.C. Nov. 5, 2004) (Urbina, J.) (noting that despite policy in favor of arbitration, "parties cannot be forced into arbitration unless they have agreed to do so."); see also Rourke v. Amchem Prods.,

3

Inc., 835 A.2d 193, 211 (Md. Ct. App. 2003) (same).[4]

Whether the present dispute is arbitrable is a matter of contract construction -- that is, whether the arbitration clause in the Executive Agreements can be fairly interpreted to encompass matters concerning attorney disqualification. See Lok Tio, 2004 WL 2663149, at *6 (comparing arbitration clause against parties' disputes to determine whether disputes fell within scope of clause). Here, Section 9(b) of the Executive Agreements requires arbitration of "any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof." The issue of Crowell & Moring's disqualification raised by General Growth's Complaint falls well outside any plausible construction of this language. Initially, it is indisputable that the "breach, termination or validity" of the Executive Agreements has nothing to do with whether Crowell & Moring's representation of the Executives violates D.C. Rule of Professional Conduct 1.9.

The question remaining, then, is whether the dispute "aris[es] out of or relate[s]" to the Executive Agreements. It does not. Crowell & Moring's conduct is entirely unrelated to, and wholly independent from, the relationship between the Executives and General Growth created by the Executive Agreements. The disqualification dispute arises not as a result of any action taken by General Growth or the Executives under or related to the Executive Agreements. Rather, it arises from the conduct of Crowell & Moring, which was never a party to the Executive Agreements. Indeed, the rights and obligations sought to be enforced by General Growth find no basis in the Executive Agreements, but solely under the D.C. Rules of

---

[4] The Executive Agreements are governed by Maryland law. (See Compl. Ex. A, § 16.)

Professional Conduct. Thus, Section 9(b) of the Executive Agreements cannot be read to encompass the present dispute.

The Executives' motion does not and cannot dispute this. Instead, the Executives attempt to sidestep the issue, claiming that the subject of Crowell & Moring's disqualification is a mere "accompanying procedural dispute" to the underlying controversy and, thus, subject to determination by the arbitration panel. (Mot. 6 - 7.) This is sleight-of-hand, however, because the disqualification dispute is not a "procedural issue" <u>related</u> in any way to the parties' respective obligations under the Executive Agreements. For example, in <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543 (1964), cited by the Executives, the "procedural issue" that the Supreme Court ruled was arbitrable involved a dispute over whether one party had followed the grievance procedures prescribed <u>by the parties' agreement</u> -- a procedural dispute obviously arising out of specific language delineating the parties' respective contractual obligations. <u>Id.</u> at 557. Here, in stark contrast, the disqualification dispute concerns only which attorneys may lawfully present the Executives' claims to the arbitration Panel -- a matter with no connection to the relationship created by the contract containing the arbitration clause.

This distinction is examined in detail in <u>Phoenix Mut. Life Ins. Co. v. N. Am. Co. for Life & Health Ins.</u>, 661 F. Supp. 751 (N.D. Ill. 1987) (Shadur, J.). There, the court faced the identical issue presented here: whether, as a matter of contract interpretation, a disqualification dispute falls within an arbitration clause. <u>Id.</u> at 751-52. In <u>Phoenix</u>, the party resisting judicial determination of the disqualification dispute argued -- like the Executives -- that because the arbitration clause submitted "all disputes" to arbitration, the disqualification issue should be

5

determined by the arbitrators. Id. at 753. The court rejected this approach as an "oversimplification of language," and held that the arbitration clause, despite its breadth, could not be read to compel arbitration of a motion to disqualify:

> Not all "disputes" and "differences" in the world can be fairly viewed as arbitrable because of the [contracts'] mandate, but only those relating to the parties' duties to each other under the [contracts] themselves.
>
> \*     \*     \*
>
> It must be remembered that what is at issue on the current motion is not at all a substantive "difference" or "dispute" as to the [contract] itself. Instead the matter on which the parties part company is a wholly tangential question: what lawyers should be entitled to represent North American Companies in the resolution of their substantive "differences" or "disputes" with Phoenix, whether through arbitration or litigation.

Id. (emphasis added).[5]

Numerous other courts that have considered the issue have reached the same conclusion. Action Air Freight, Inc. v. Pilot Air Freight Corp., 769 F. Supp. 899, 901 (E.D. Pa. 1991) (complaint to disqualify counsel from participating in arbitration proceeding was properly before district court, because dispute was not related to matters at issue in arbitration, and, thus, judicial intervention would not "impugn the authority of the arbitrator"); Yardis Corp. v. Levine, No. Civ. A. 89-8794, 1991 WL 3535, at \*2 (E.D. Pa. Jan. 11, 1991) (similar); Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz, No. 87 C 6824, 1988 WL 138149, at \*3-4 (S.D.N.Y.

---

[5] Under the Executives' proposed interpretation of Section 9(b) of the Executive Agreement, any "dispute" between the Executives and General Growth with some metaphysical connection to the Executive Agreements -- no matter how remote -- would be arbitrable. The Phoenix court presents a helpful analogy to illustrate the absurdity of such an interpretation: if a General Growth employee on her way to the arbitration proceedings was rear-ended by one of the Executives, the resulting dispute would -- in some abstract sense -- be "related to" the Executive Agreements, but no one would suggest that General Growth would be required to arbitrate such a dispute under Section 9(b). See 661 F. Supp. at 753.

6

Dec. 12, 1988) (similar). As one court squarely put it:

> I do not believe that a party who agrees to submit particular disputes to arbitration is also agreeing to have the arbitrators provide the only protection to that party from an attorney's alleged breach of a fiduciary duty.

Croushore v. Buchanan Ingersoll P.C., No. GD96-7690, 1996 WL 932086, at *8 (Pa. Com. Pl. Aug. 2, 1996).

The cases cited by the Executives reaching the contrary conclusion (see Mot. 8 - 9) are easily distinguished. In Canaan Venture Partners, L.P. v. Salzman, 1996 Conn. Super LEXIS 245 (Conn. Super. Ct. Jan. 22, 1996), the court was hesitant to entertain a motion to disqualify because the arbitration proceedings had been ongoing for over six months, and disqualification proceedings would have substantially interrupted the arbitration process. Id. at *7. Likewise, in Hibbard Brown & Co. v. ABC Family Trust, 1992 U.S. App. LEXIS 6469 (4th Cir. April 8, 1992), the court's primary concern was that judicial entertainment of a motion to disqualify would "have the result of interfering with the arbitration proceedings" by requiring "duplicative fact-finding." Id. at *10; see also Dyntel Corp. v. Ebner, 120 F.3d 488, 491 (4th Cir. 1997) (upholding refusal to entertain disqualification complaint where arbitration had been ongoing for six months before complaint was filed). Here, on the other hand, General Growth filed its Complaint before a preliminary arbitration hearing had even been held, and the Panel has since decided to stay proceedings pending this Court's determination of the matters raised in General Growth's Complaint. (See Exhibit B.) Thus, there will be no "duplication of efforts," and the arbitration process will be expedited -- not hindered -- by this Court's resolution of the

7

disqualification issue.[6]

In short, the disqualification dispute -- regardless of whether it is a matter of substance or procedure -- simply does not arise from the parties' respective obligations to one another under the Executive Agreements. Thus, the Executives' oversimplified reading of the arbitration clause contained in Section 9(b) of the Executive Agreements must be rejected, and their motion denied.

### B. Disqualification Proceedings Are Within The Exclusive Jurisdiction Of The Courts

Another, independent, reason compels the conclusion that this Court, not the Panel, must decide the present dispute. Given the public policy considerations involved in applying the Rules of Professional Conduct,[7] disqualification proceedings are uniquely within the jurisdiction of the courts, and, therefore, *per se* outside the scope of an arbitrator's authority. The Executives' motion seeks to invoke the "federal policy favoring arbitration," yet ignores the countervailing (and, indeed, overriding) public policy favoring judicial determination of matters regarding attorney misconduct.

The Executives argue that whether Crowell & Moring's representation of them in the arbitration proceedings violates D.C. Rule of Professional Conduct 1.9 is just "[an]other

---

[6] Another case cited by the Executives, Wuttembergischef Fire Ins. Co. v. Republic Ins. Co., No. 86 Civ. 2696-CSH (S.D.N.Y. 1986), is not even publicly available (either in print or electronic format), and the Executives have not provided General Growth's counsel with copies of the opinion.

[7] See, e.g., Carl v. Children's Hosp., 702 A.2d 159, 165 n.9 (D.C. 1997) (D.C. Rules of Professional Conduct reflect public policy regarding conduct of attorneys); In re Berryman, 764 A.2d 760, 774 (D.C. 2000) (enforcement of D.C. Rules of Professional Conduct is necessary to ensure "public confidence in the integrity of the bar.") (citations omitted).

8

procedural question[]." (See Mot. 7.) Case law, however, teaches that matters of attorney misconduct are not mere "procedural questions," but present unique and important public policy concerns not ordinarily present when considering whether a matter is arbitrable. See, e.g., In re Agent Orange Prod. Liab. Litig., 611 F. Supp. 1452, 1457-58 (E.D.N.Y. 1985), reversed on other grounds, 818 F.2d 216 (2d Cir. 1987) ("The general federal policy favoring arbitration must be balanced against the equally significant policies favoring judicial determination of questions about the propriety of professional conduct").

Numerous courts have concluded that the public policy in favor of judicial determination of matters concerning attorney misconduct compels that disqualification disputes be submitted to a court in the jurisdiction whose rules of professional conduct govern the attorneys involved. See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin, 766 N.Y.S.2d 1, 6 (App. Div. 2003) ("issues of attorney disqualification involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules and cannot be left to the determination of arbitrators selected by the parties themselves"); Croushore, 1996 WL 932086, at *5 ("A former client who claims that an attorney's representation of a subsequent client constitutes an impermissible conflict of interest has the right to obtain a court order compelling disqualification through an independent action"); Bidermann Indus. Licensing, Inc. v. Avmar N.V., 570 N.Y.S.2d 33, 34 (App. Div. 1991) (same).

The reason is simple. A disqualification dispute concerns the relationship between a party and its former attorneys, and not a dispute between the two parties to the arbitration. Thus, the wronged party has every right to seek to enforce its former attorneys' professional

9

obligations in a judicial proceeding separate and apart from the confidential arbitration proceeding. See Croushore, 1996 WL 932086, at *5.[8]

This is further confirmed by the rules under which the underlying arbitration is being conducted. Section 9(b) of the Executive Agreements provides that the arbitration shall be "conducted expeditiously in accordance with the Center for Public Resources, Inc. ('CPR') Rules for Non-Administered Arbitration . . . ."[9] The CPR Rules contain no mechanism by which to address a motion to disqualify counsel. As recognized by one court:

> In the case *sub judice*, [the disqualification complaint] does not ask the court to interfere with the authority of the arbitrator. The arbitrator's powers are created under the American Arbitration Commercial Arbitration Rules, which were chosen by the parties. These Rules contain no provision for addressing the professional conduct of lawyers.

Action Air, 769 F. Supp. 899, 901. Thus, if left to the devices of the CPR Rules, General Growth would have a right for which there is no means by which to seek a remedy.

---

[8] Following the Executives' argument to its logical extreme, the applicable Rules of Professional Conduct could potentially be interpreted and applied by arbitrators who were non-attorneys -- a clearly unacceptable result. See Bidermann, 570 N.Y.S.2d at 34 ("Issues of attorney disqualification similarly involve interpretation and application of the Code of Professional Responsibility and Disciplinary Rules, as well as the potential deprivation of counsel of the client's choosing, and cannot be left to the determination of arbitrators selected by the parties themselves for their expertise in the particular industries engaged in.") (citations omitted). Similarly, an arbitrator's resolution of a disqualification dispute would be effectively unreviewable by a Federal District Court. The Federal Arbitration Act ("FAA") does not allow for interlocutory appeals arising from arbitrations, and Section 10 of the FAA ("Vacation; grounds; rehearing") does not provide for the vacation of an award based on an arbitration panel's denial of a motion to disqualify. In contrast, this Court's resolution of the Complaint is reviewable.

[9] A copy of the CPR Rules is attached as Exhibit C.

**II.        The Scope Of The Arbitrators' Authority
            Is A Matter For The Court To Decide**

As an afterthought, the Executives make a brief argument that the arbitrators and not the Court should decide the arbitrability of the present dispute over Crowell & Moring's conduct. (Mot. 10.) This is a moot point. By its letter of July 25, the Panel has determined to stay the arbitration proceedings until this Court determines the proper forum for the disqualification dispute, thereby recognizing that this Court should decide whether the disqualification issue is arbitrable. (See Exhibit A.)

In any event, the Supreme Court has expressly held that arbitrability is a matter for judicial determination. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 945 (1995). This Court has reached the same conclusion: "[b]ecause arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause." Lok Tio, 2004 WL 2663149, at * 2 (citations omitted). Further, General Growth is required to raise the arbitrability question in a court of law, or waive the right to do so in the future. See, e.g., Drivers, Chauffeurs & Helpers Local Union No. 639 v. D.C., 631 A.2d 1205, 1211 (D.C. 1993).

Accordingly, the arbitrability of the present dispute is properly before this Court.

**CONCLUSION**

For the reasons stated herein, the matter of Crowell & Moring's disqualification from representing the Executives in the underlying arbitration proceedings should be decided by this Court, and the Executives' motion to compel arbitration and dismiss General Growth's Complaint should be denied.

11

An oral hearing is requested.

                                      Respectfully submitted,

                                      GENERAL GROWTH PROPERTIES, INC.

                                      /s/ Alexander J. May
                                      Alexander J. May (D.C. Bar # 454990)
                                      BRASSEL & BALDWIN, P.A.
                                      112 W. Street
                                      Annapolis, MD 21401
                                      (410) 216-7900

                                      *Counsel for Plaintiff*

August 26, 2005

                                      Of Counsel:

                                      Eric N. Macey
                                      Vincent M. Roche
                                      NOVACK AND MACEY LLP
                                      100 N. Riverside Plaza
                                      Chicago, IL 60606
                                      (312) 419-6900

## POINTS AND AUTHORITIES

**Cases**

*Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F. Supp. 899 (E.D. Pa. 1991) . . . . . 6, 10

*Amtrak v. Express Trak, L.L.C.*, 330 F.3d 523 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bidermann Indus. Licensing, Inc. v. Avmar N.V.*, 570 N.Y.S.2d 33 (App. Div. 1991) . . . . . . 9, 10

*Canaan Venture Partners v. Saltzman*, 1996 Conn. Super LEXIS 245
      (Conn. Sup. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Carl v. Children's Hosp.*, 702 A.2d 159 (D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Croushore v. Buchanan Ingersoll P.C.*, No. GD96-7690, 1996 WL 932086
 (Pa. Com. Pl. Aug. 2, 1996) .................................................. 7, 9, 10

*Drivers, Chauffeurs & Helpers Local Union v. D.C.*, 631 A.2d 1205 (D.C. 1993) ......... 11

*Dyntel Corp. v. Ebner*, 120 F.3d 488 (4th Cir. 1997) ................................ 7

*Ellsworth Assocs., Inc. v. U.S.*, 917 F. Supp. 841 (D.D.C. 1996) ..................... 3

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ......................... 11

*Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz*, No. 87 C 6824,
 1988 WL 138149 (S.D.N.Y. Dec. 12, 1988) ...................................... 6

*Hibbard Brown & Co. v. ABC Family Trust*, 1992 U.S. App. LEXIS 6469
 (4th Cir. 1992) .............................................................. 7

*In re Agent Orange Prod. Liability Litig.*, 611 F. Supp. 1452 (E.D.N.Y. 1985),
 *reversed on other grounds*, 818 F.2d 216 (2d Cir. 1987) ....................... 9

*In re Berryman*, 764 A.2d 760 (D.C. 2000) .......................................... 8

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) ......................... 5

*Lok Tio v. Wash. Hosp. Ctr.*, No. 04 C 0701(RMU), 2004 WL 2663149
 (D.D.C. Nov. 5, 2005) ................................................. 3, 4, 11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 766 N.Y.S.2d 1
 (App. Div. 2003) ............................................................ 9

*Phoenix Mut. Life Ins. Co. v. N. Am. Co. For Life & Health Ins.*,
 661 F. Supp. 751 (N.D. Ill. 1987) ......................................... 5, 6

*Rourke v. Amchem Products, Inc.*, 835 A.2d 193 (Md. Ct. App. 2003) .................. 3

*Wuttembergischef Fire Ins. Co. v. Republic Ins. Co.*,
 No. 86 Civ. 2696-CSH (S.D.N.Y. 1986) ........................................ 8

*Yardis Corp. v. Levine*, No. Civ. A. 89-8794, 1991 WL 3535
 (E.D. Pa. Jan. 11, 1991) .................................................... 6

**Rules/Statutes**

D.C. Rule of Professional Conduct 1.9 ................................... 2, 4, 8

Center for Public Resources, Inc. Rules for Non-Administered Arbitration ................ 10

Federal Arbitration Act ................................................. 10

14

## **CERTIFICATE OF SERVICE**

Alexander J. May, an attorney, hereby certifies that a true and correct copy of the foregoing was filed electronically with the Court and served by the same means on all counsel of record:

>Barry E. Cohen
>Thomas P. Gies
>Rebecca L. Springer
>CROWELL & MORING, LLP
>1001 Pennsylvania Ave., NW
>Washington, DC 20004

This 26th day of August, 2005

/s/ Alexander J. May
Alexander J. May