UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| General Growth Properties, Inc. )<br><br>Plaintiff, )<br>v. )<br>)<br>Gordon Glenn, John McLaughlin )<br>and Thomas Fitzpatrick, )<br>)<br>Defendants ) | Case No. 1:05CV01436 |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND DISMISS COMPLAINT**

Defendants Gordon Glenn, John McLaughlin and Thomas Fitzpatrick ("the Executives") submit this Reply Memorandum in further support of their motion to dismiss the complaint and to compel arbitration of the attorney disqualification issue raised by Plaintiff General Growth Properties, Inc. ("GGP").

I. **The Disqualification Dispute is Subject to the Parties' Agreement to Arbitrate**

GGP's Opposition largely ignores the strong federal policy in favor of arbitration. As this Court has recognized, the Federal Arbitration Act "creates a strong presumption in favor of enforcing arbitration agreements and '[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Lok Tio v. Washington Hosp. Ctr.*, No. 04 C0701 (RMU), 2004 WL 26631149 at 2 (D.D.C. Nov. 5, 2004) (Urbina J.) (quoting *Shearson/American Express, Inc. v.*

-1-

*McMahon*, 482 U.S. 220, 226-27 (1987); and *Moses H Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The Executive Agreements entered into by the Executives and their former employer, The Rouse Company,[1] contain a broadly-worded arbitration provision that requires arbitration of "any dispute arising out of or relating to this Agreement or the breach, termination or validity thereof." *See* Executive Agreement, ¶ 9(b), attached as Exhibit 1 to Executives Opening Brief. This Court has held that such language "should be interpreted broadly" consistent with the federal policy in favor of arbitration. *See Lok Tio*, 2004 WL 2663149, at *6.

A party "resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 149-50 (D.D.C. 2002). GGP's Opposition fails to meet this burden.

GGP first argues that the only question for this Court is whether the dispute generally "arises out of or relates" to the Executive Agreements because it is "indisputable that the 'breach, termination or validity' of the Executive Agreements has nothing to do with the attorney disqualification issue." (GGP Opposition at 4). GGP is wrong. This dispute arose after GGP refused to make certain payments to the Executives under the Executive Agreements, conduct the Executives believed constituted a breach of contract. GGP has asserted that the lawyers retained by the

---

[1]   GGP wrongly asserts that Crowell & Moring is its "prior counsel" (GGP Opposition at 2). Crowell & Moring has never represented GGP. Crowell & Moring performed certain legal services for Rouse, prior to the merger agreement between GGP and Rouse. None of that work is "substantially related" to our current representation of the Executives, within the meaning of District of Columbia Rule of Professional Conduct 1.9 ("Rule 1.9").

Executives to represent them in that dispute should be disqualified because of their prior representation of Rouse in other matters. This sequence of events plainly makes the disqualification dispute an issue "arising out of" GGP's alleged breach of the Executive Agreements. After all, if GGP had honored its financial obligations under the Executive Agreements, the Executives would not have needed to retain counsel in this matter.

GGP next argues that the disqualification dispute is "entirely tangential and wholly unrelated to the contractual relationship between the parties," and thus not even "a dispute 'arising out of or relating to' the Agreement" (GGP Opposition at 4). This argument is also unfounded. The disqualification issue did not grow out of a separate dispute between the Executives and GGP. Arbitrators routinely decide a wide range of procedural issues in the course of resolving the parties' underlying dispute. *See e.g. Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 84 (2002) ("procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide."). It is simply illogical for GGP to pretend that the disqualification issue does not "arise out of or relate to" the Executive Agreements.²

---

2    It is significant that GGP brought this litigation against the Executives and not their counsel. The Complaint is peculiar in that GGP does not assert a recognized cause of action against the Executives; the only issue presented is the attorney disqualification issue. GGP has no legal right to raise this claim against the Executives under Rule 1.9, inasmuch as the Executives have no current or former attorney-client relationship with GGP. However one characterizes the allegations of the complaint, it is obvious that the attorney
(continued...)

GGP's own actions confirm that the disqualification dispute is within the scope of the Executive Agreements' arbitration provision. After efforts to negotiate a settlement of their breach of contract claim failed, the Executives instituted arbitration proceedings by filing a Notice of Arbitration. Among other claims, the Notice asserted a claim for attorneys' fees under Section 9(c) of the Executive Agreements, which states that GGP "shall promptly pay or reimburse [Defendants] for all costs and expenses, including, without limitation, . . . attorneys fees" incurred by them in an action to enforce their rights under the Executive Agreements. *See* Notices of Arbitration, attached as Exhibit 1. GGP responded by arguing that the Defendants "have no right to reimbursement of fees arising from Crowell & Moring's representation of the Executives as a result of an alleged conflict of interest." *See* May 25, 2005 letter from GGP to Crowell & Moring, attached as Exhibit 2. GGP raised the alleged conflict of interest -- the basis for this litigation -- as a substantive defense to the Executives' claim that GGP breached the attorneys' fees provision of the Agreement. GGP's Opposition conveniently fails to disclose that GGP has asserted disqualification as a defense to the Executives' claim in arbitration.

Simply put, GGP cannot not be heard to argue before this Court that the disqualification dispute has no relation to the Executive Agreements, while

---

(...continued)
>   disqualification issue is a direct result of the Executives' decision to pursue their rights under the Executive Agreements.

simultaneously presenting that same issue as a substantive defense to its obligation to pay or reimburse the Executives for their attorneys fees. The disqualification dispute is thus inextricably related to rights and obligations contained in the Executive Agreement, and clearly within the scope of the arbitration provision.

None of the cases cited by GGP can be fairly read to exclude disqualification disputes from the scope of the arbitration provision in the Executive Agreements. For example, *Phoenix Mutual Life Ins. Co. v. North American Co. for Life and Health Ins.*, 661 F. Supp. 751 (N.D. Ill. 1987) is distinguishable on several grounds. First, *Phoenix Mutual* did not involve a disqualification question arising in an arbitration of a substantive dispute, but rather was an effort to invoke arbitration to resolve a free-standing conflict of interest question. Second, the language contained in the reinsurance insurance contracts in *Phoenix Mutual* was not as broad as that found in the Executive Agreements, and the parties' own conduct demonstrated that they believed the dispute at issue to be beyond the reach of the arbitration provision. Here, by contrast, the Executives have consistently maintained that the disqualification dispute should be decided in arbitration. Third, in assessing whether the arbitration clause was broad enough to encompass the parties' claims, the judge analyzed whether the dispute at issue was one "relating to the parties' duties and obligations to each other under the [reinsurance contracts.]" The disqualification dispute at issue here is clearly arbitrable under that analysis because, unlike *Phoenix Mutual*, where the dispute did not relate to the parties' duties under their agreement, the present dispute relates directly to

GGP's contractual duty to reimburse the Executives for their attorneys fees pursuant to section 9(c) of the Executive Agreements.[3]

In sum, GGP cannot demonstrate that the disqualification issue is beyond the scope of the arbitration provision in the Executive Agreements.

## II. Arbitrators Have The Authority to Decide Disqualification Issues

GGP next argues that disqualification issues are within the exclusive jurisdiction of the judiciary, and cannot be decided by arbitrators even where, as here, the issue is well within the scope of a valid arbitration agreement. GGP's position is without merit.

Courts have routinely held that arbitrators have the authority to rule upon motions to disqualify counsel. *See, e.g., Canaan Venture Partners v. Saltzman*, 1996 Conn. Super LEXIS 245 (Conn. Sup. Ct. 1996) (ruling that the authority to decide the disqualification motion rested with the arbitrator not with the court); *UBS*

---

[3] GGP similarly misreads *Action Air Freight v. Pilot Air Freight Corp.*, 769 F. Supp. 899 (E.D. Pa. 1991). *Action Air* does not even address the scope of an arbitration clause in relation to an attorney disqualification issue. There, one party to an arbitration sought to enjoin counsel for the other party from contacting its former employees, allegedly in violation of applicable ethical rules. The court entertained the complaint (although dismissing it on the merits) because it concluded that the arbitration tribunal did not have the authority to issue injunctive relief to prevent the alleged ethical misconduct. Likewise, nothing in either *Yardis Corp v. Levine*, 1991 WL 3535 (E.D. Pa. 1991), or *Gwertzman v. Gwertzman, Pfeffer, Tokar and Lefkowitz*, 1988 WL 138149 (S.D.N.Y. 1988), suggests that a disqualification issue is beyond the scope of a broadly-worded arbitration provision. In fact, there is no suggestion in either decision that any of the parties ever proposed submission of the disqualification issue to arbitration.

*Painewebber Inc. v. Stone*, 2002 U.S. Dist. LEXIS 5162 (Mar. 2002) (recognizing that plaintiff's motion to disqualify counsel to prevent alleged violation of the Professional Code of Conduct should be decided in arbitration). And arbitrators have repeatedly ruled upon parties' motions to disqualify counsel. For instance, motions to disqualify counsel are routinely heard and decided upon in commercial disputes in the securities industry. *See, e.g., In re Arbitration between Routien and Raymond James Financial Services*, Case No. 02-02993, 2004 NASD Arb. LEXIS 966 (May 4, 2004) (arbitration panel ruling upon and rejecting defendants' motion to disqualify counsel); *In re Arbitration between Demers and Roan-Meyers Assoc.*, Case No. 02-06233, 2004 NASD Arb. LEXIS 593 (Mar. 17, 2004) (same); *In re Arbitration between Sharp and Thornwater Co.*, Case No. 00-04269, 2003 NASD Arb. LEXIS 1907 (Oct. 27, 2003) (same).

The court's observation in *Wurttembbergische Fire Ins. Co. v. Republic Insurance Company*, No. 86 Civ. 2696-CSH, 1986 U.S. Dist. LEXIS 23032 (S.D.N.Y. 1986) with respect to the arbitrator's authority is particularly instructive here:

> Were I to [grant plaintiff's motion to disqualify counsel], this Court would interfere directly in a pending arbitration, to which plaintiffs and PAG agreed by contract. That interference would deny PAG counsel of its choice in that arbitration, at least during the pendency of plaintiffs' motion to disqualify defendants' counsel in this litigation, thereby bringing the arbitration to a dead stop. The district courts' powers in arbitration matters are both created and limited by the Federal Arbitration Act. I find nothing in the statute sanctioning such judicial interference. . . It is for the arbitrators to control their own internal procedures, subject only to the very limited post-award remedies conferred by § 10 of the Act.

Id. at 1-2.

None of the cases cited by GGP support the conclusion that disqualification questions cannot be decided in arbitration. GGP suggests, relying on *In re Agent Orange Product Liability Litig.*, 611 F. Supp 1452 (E.D.N.Y 1985), that disqualification questions "present unique and important public policy concerns" that are somehow not appropriate for resolution by arbitrators (GGP Opposition at 9). GGP's reliance on *In re Agent Orange* reveals a fundamental misapprehension of controlling legal principles. That case concerned the distribution of attorneys fees to various lawyers in a product liability class action under an agreement among the lawyers to arbitrate disputes under a fee-sharing agreement. It in no way supports GGP's position here. First, the case did not concern disqualification as a proper subject for arbitration. Second, and more important, the authority relied on by the court as support for the conclusion that certain subjects, e.g., antitrust and securities laws disputes, are properly excluded from an otherwise applicable arbitration agreement have all been overruled in subsequent decisions of the United States Supreme Court. *See, e.g., Shearson/American Express v. McMahon*, 482 U.S. 220 (1987) (securities claims held arbitrable); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) (antitrust claims held arbitrable). Whatever policy considerations may have existed twenty years ago to support a decision to withdraw an attorneys fee distribution agreement from the scope of an arbitration agreement have long since disappeared. As the Supreme Court has observed, "even claims arising under a statute designed to further important social policies may be arbitrated because 'so long as the prospective litigant effectively

may vindicate [his or her] statutory cause of action in the federal forum,' the statute serves its functions." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 90 (2000); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) (compelling arbitration of statutory employment claims). Because GGP may vindicate its asserted right under Rule 1.9 before the arbitration tribunal, there is no policy basis for this Court to exclude the disqualification issue from the presumption in favor of arbitrability.

GGP's reliance on *Bidermann Industries Licensing, Inc. v. Avmar N.V.*, 570 N.Y.S.2d 33 (App. Div. 1991). and *Croushore v. Buchanan Ingersoll, P.C.*, 1996 WL 932086 (Pa. Com. Pl. 1996) is also misplaced. In *Croushore*, the state court analyzed a very narrow arbitration clause and determined that, where the disqualification claim was filed before the arbitrators were even selected, and where the claim was ancillary to the underlying dispute, the court should decide the disqualification issue. The court's decision in *Bidermann* contains little substantive analysis and no discussion of either the scope of the arbitration clause or procedural posture of the pending arbitration. Here, by contrast, the disqualification is directly related to the underlying dispute between the Executives and GGP. Moreover, the Executives invoked the conflict resolution provisions of the Executive Agreement almost nine months ago and then explicitly raised the disqualification issue with the arbitration tribunal. *See* July 1, 2005, Letter to Arbitrators, attached as Exhibit 2 to Executives Opening Memorandum. GGP filed this litigation thereafter as an obvious litigation tactic. The decisions in both *Bidermann* and *Croushore* were

rendered by lower courts, applying foreign state's laws, and as such are obviously not binding on this Court. This Court should refuse to follow *Bidermann* and *Croushore*, because the cases are both out of step with the decisions of other courts and arbitration decisions, and at odds with the strong presumption in favor of arbitration set forth in the Federal Arbitration Act. GGP's invocation of the decision of the arbitration panel to stay further proceedings in light of this litigation (*see* GGP Opposition at 11) omits the critical fact that the panel's decision was premised on the understanding that this Court would rule promptly on a motion to compel arbitration. The panel's actions cannot be characterized as an indication of its unwillingness to decide the disqualification issue.

Conclusion

For the reasons set forth above and in their initial memorandum, the Executives respectfully request that the Court compel arbitration of the GGP's attorney disqualification issue and dismiss GGP's complaint.

Respectfully submitted,

_____
Barry E. Cohen (D.C. Bar No. 180505)
Thomas P. Gies (D.C. Bar No. 943340)
Rebecca L. Springer (D.C. Bar No. 465982)
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
(202) 624-2500

Counsel for Defendants

September 8, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2005 I caused Defendants' Reply Memorandum in Support of Defendants' Motion to Dismiss and to Compel Arbitration to be served by first class mail, postage prepaid upon:

Alexander J. May
Brasses & Baldwin, P.A.
112 West Street
Annapolis, MD 21401

Eric N. Macey
Vincent M. Roche
Novack and Macey, LLP
100 N. Riverside Plaza
Chicago, IL 60606

Rebecca L. Springer

#2262318