## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GENERAL GROWTH PROPERTIES,    )
INC., a Delaware corporation         )
                                )
      Plaintiff,             )    Case No. 1:05CV01436
                                )
      v.                    )
                                )    Judge Ricardo M. Urbina
GORDON GLENN, JOHN McLAUGHLIN, )
and THOMAS FITZPATRICK       )
                                )
      Defendants.           )

## GENERAL GROWTH PROPERTIES, INC.'S MOTION TO STRIKE OR, IN THE ALTERNATIVE, TO FILE A SURREPLY *INSTANTER*

Plaintiff General Growth Properties, Inc. ("General Growth") submits this Motion to Strike or, in the alternative, to file a Surreply *instanter*, in response to Defendants Gordon Glenn, John McLaughlin, and Thomas Fitzpatrick's (the "Executives") Reply in Support of their Motion to Compel Arbitration and Dismiss Complaint. In support of this Motion, General Growth states as follows:

1.     LCvR 7(d) provides that "[w]ithin five days after service of the memorandum in opposition the moving party may file and serve a reply memorandum."

2.     General Growth's Opposition was filed on August 26, 2005.

3.     The Executives' Reply was not filed until September 8, well outside the time frame established by LCvR 7(d). It should, therefore, be stricken as untimely filed.

4.     In the alternative, General Growth requests leave to file *instanter* a short Surreply, which is attached hereto as Exhibit 1, to correct a material misstatement in the Executives' Reply.

WHEREFORE, for the reasons stated herein, General Growth requests that the Executives' Reply be stricken or, in the alternative, that it be granted leave to file a Surreply *instanter.*

Respectfully submitted,

GENERAL GROWTH PROPERTIES, INC.

/s/ Alexander J. May

Alexander J. May (D.C. Bar # 454990)
BRASSEL & BALDWIN, P.A.
112 W. Street
Annapolis, MD 21401
(410) 216-7900

*Counsel for Plaintiff*

September 20, 2005

*Pro Hac Vice*:

Eric N. Macey
Vincent M. Roche
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| GENERAL GROWTH PROPERTIES, INC., a Delaware corporation | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:05CV01436 |
| v. | ) ) | Judge Ricardo M. Urbina |
| GORDON GLENN, JOHN McLAUGHLIN, and THOMAS FITZPATRICK | ) ) ) | |
| Defendants. | ) ) | |

**GENERAL GROWTH PROPERTIES, INC.'S SURREPLY IN OPPOSITION TO
DEFENDANTS' REPLY IN SUPPORT OF
<u>MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT</u>**

Plaintiff General Growth Properties, Inc. ("General Growth") submits this Surreply in

opposition to Defendants Gordon Glenn, John McLaughlin, and Thomas Fitzpatrick's (the

"Executives") Reply in Support of their Motion to Compel Arbitration and Dismiss Complaint.

<u>**ARGUMENT**</u>

**I.     The Executives' Reply Falsely States That General
Growth Has Raised Crowell & Moring's Conflict Of
<u>Interest As A Substantive Defense In The Arbitration Proceedings</u>**

In their Reply, the Executives claim that this dispute is within the scope of the arbitration

clause contained in Section 9(b) of the Executive Agreements because General Growth has

raised Crowell & Moring's conflict of interest as a "substantive defense . . . to the Executives'

claim [for attorneys' fees] in arbitration." (Reply at 4.) That is false. The Executives' Reply

incorrectly states that:

> GGP raised the alleged conflict of interest -- the basis for this litigation -- as a
> substantive defense to the Executives' claim that GGP breached the attorneys'
> fees provision of the [Executive] Agreement. GGP's Opposition conveniently

fails to disclose that GGP has asserted disqualification as a defense to the Executives' claim in arbitration.

(Id.)  In fact, <u>nowhere</u> in General Growth's Notice of Defense, which is attached hereto as Exhibit A, does General Growth raise Crowell & Moring's conflict of interest as a "substantive defense" to the Executives' claims for attorneys' fees.

The reason is quite simple:  General Growth did not learn of Crowell & Moring's conflict of interest <u>until May 10, 2005</u>.  (<u>See</u> May 25, 2005 Letter from Michael Chimitris to Thomas Gies, attached as Exhibit B.)  General Growth's Notice of Defense was submitted on May 9. (<u>See</u> Exhibit A.)  Therefore, General Growth could not have raised (and did not raise) Crowell & Moring's conflict of interest as a substantive defense to the Executives' claim for attorneys' fees in the arbitration. (<u>Id.</u>)  Nor has General Growth amended its Notice of Defense to raise the issue as a substantive defense.  Thus, contrary to the Executives' claim in their Reply, Crowell & Moring's conflict of interest is simply not before the arbitration panel as a substantive defense to any of the claims made by the Executives in those proceedings.  The Executives, therefore, have no basis for claiming that the disqualification dispute is within the scope of the arbitration clause contained in Section 9(b) of the Executive Agreements, and their Motion should be denied accordingly.

## II.    <u>The Executives Misdescribe The Effect Of Certain Arbitration Decisions</u>

The Executives also claim that simply because other arbitrators have ruled on motions to disqualify, the Court should likewise leave the issue to the Panel in this case.  (Reply at 7.) None of the arbitration decisions cited by the Executives, however, contain any discussion of the proper forum for resolution of such a dispute.  Of course, a party may <u>choose</u> to file such a

2

motion with the arbitrators, thereby waiving its right to a judicial determination, but, as established in General Growth's Opposition, a party is not <u>required</u> to do so.  <u>See</u>, <u>e.g.</u>, <u>Croushore v. Buchanan Ingersoll P.C.</u>, No. GD96-7690, 1996 WL 932086, at *5 (Pa. Com. Pl. Aug. 2, 1996) ("A former client who claims that an attorney's representation of a subsequent client constitutes an impermissible conflict of interest has the right to obtain a court order compelling disqualification through an independent action").

WHEREFORE, General Growth requests that the Executives' Motion to Compel Arbitration and Dismiss Complaint be denied.

Respectfully submitted,

GENERAL GROWTH PROPERTIES, INC.

/s/ Alexander J. May
Alexander J. May (D.C. Bar # 454990)
BRASSEL & BALDWIN, P.A.
112 W. Street
Annapolis, MD 21401
(410) 216-7900

*Counsel for Plaintiff*

September 20, 2005

*Pro Hac Vice*:

Eric N. Macey
Vincent M. Roche
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900

3

# EXHIBIT A

### NOVACK AND MACEY LLP

ATTORNEYS AT LAW

SUITE 1500

303 WEST MADISON STREET

CHICAGO, ILLINOIS 60606-3308

TELEPHONE: (312) 419-6900

FACSIMILE: (312) 419-6928

WWW.NOVACKANDMACEY.COM

KENNETH M. ABELL
ALLAN V. ABINOJA
ANDREW D. CAMPBELL
STEVEN J. CISZEWSKI
KRISTEN WERRIES COLLIER
RICHARD G. DOUGLASS*
SHELBY L. DRURY
BRIAN M. DUNN**
P. ANDREW FLEMING●
STEPHANIE J. HARRIS
KAREN L. LEVINE
ERIC N. MACEY
MONTE L. MANN○
MITCHELL L. MARINELLO★
ELIZABETH A. MAYER
RICHARD L. MILLER II

TIMOTHY J. MILLER
CHRIS S. MOORE
STEPHEN NOVACK
ALISON TALBERT SCHWARTZ
JOHN F. SHONKWILER
STEPHEN J. SIEGEL
JOSEPH J. SIPRUT
LOUIS C. SZURA✝
DONALD A. TARKINGTON
COURTNEY D. TEDROWE*
MICHAEL A. WEINBERG

○ ALSO ADMITTED IN DISTRICT
   OF COLUMBIA
✝ ALSO ADMITTED IN FLORIDA
* ALSO ADMITTED IN GEORGIA
★ ALSO ADMITTED IN NEW YORK
✝ ALSO ADMITTED IN OHIO
● BARRISTER-AT-LAW

May 9, 2005

**VIA FACSIMILE AND U.S. MAIL**

**NOTICE OF DEFENSE**

To:    Thomas P. Gies
       Crowell & Moring LLP
       1001 Pennsylvania Ave. NW
       Washington, DC, 20004
       (202) 628-5116 (facsimile)

From:  General Growth Properties, Inc.
       c/o Novack and Macey LLP
       303 W. Madison
       Chicago, IL 60606

Re:    **Gordon H. Glenn, Thomas M. Fitzpatrick, and John G. McLaughlin**

Pursuant to the Center for Public Resources ("CPR") Non-Administered Arbitration Rule 3.4, General Growth Properties, Inc. ("General Growth") submits the following Notice of Defense and Counterclaim in response to your clients' April 25, 2005 Notices of Arbitration.

\*                \*                \*

Pursuant to CPR Rule 3.5(b), the following is a statement of the general nature of General Growth's defense to your (collectively, "the Executives") claims:

**Background**

1.    This dispute arises as a result of the Executives' claims for various cash payments and other benefits under certain Executive Agreements between the Executives and General Growth, and under applicable law.

Notice of Defense
May 9, 2005
Page 2

2.    On or about August 19, 2004, General Growth entered into an Agreement and Plan of Merger ("Merger Agreement") with The Rouse Company ("Rouse"). The merger between General Growth and Rouse ("Merger") was consummated on or about November 12, 2004.

3.    The Executives are former Rouse executives whose positions were eliminated by reason of the Merger. In anticipation of the Merger, the Executives entered into the Executive Agreements with Rouse.

4.    Sections 6 and 10 of the Executive Agreements contain a detailed itemization of various parachute payments to be made, and benefits afforded, to the Executives upon the elimination of their positions as a result of the Merger.

5.    Upon the completion of the Merger, General Growth assumed the Executive Agreements on behalf of Rouse. To date, the Executives have collectively received approximately $8 Million in parachute payments and benefits under the Executive Agreements from General Growth.[1]

### The Executives' Demands

#### Severance Pay

6.    Despite the fact that they have already collectively received approximately $8 Million under the Executive Agreements, the Executives also claim to be entitled to severance pay under the Rouse Separation Policy ("Separation Policy").

7.    Because the Separation Policy is considered an employee welfare benefit plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), ERISA's broad pre-emptive effect precludes the Executives' claim for severance pay, insofar as that claim is based on state contract law. Instead, the provisions of ERISA exclusively govern the resolution of whether the Executives are entitled to severance pay.

8.    ERISA affords an administering company wide latitude in making discretionary severance payments under a separation policy. Here, because the Executives have already received generous severance packages from General Growth, denying the Executives the right

---

[1]    Specifically, Fitzpatrick has received $3 Million; McLaughlin has received $2.7 Million; and Glenn has received $2.1 Million.

Notice of Defense
May 9, 2005
Page 3

to a duplicative payment under the Separation Policy cannot be considered an "arbitrary and capricious" administration of the Separation Policy. Thus, ERISA does not entitle the Executives to severance pay under the Separation Policy. Even assuming, however, that the Executives' claim for severance pay is a matter of state contract law, that claim fails as well for the reasons that follow.

9.    Each Executive Agreement contains a provision providing that the Executives shall be entitled to "Other Benefits" upon termination. (Executive Agreement, § 6(a)(xii).) "Other Benefits" is defined as:

> other amounts or benefits required to be paid or provided or which the Executive is eligible to receive under any plan, program, policy or practice or contract or agreement of the Company, including earned but unpaid and stock and similar compensation, that is in effect on the date that is six months prior to the Operative Date.

(Id., § 1(q).)

10.    According to the Executives, this "Other Benefits" provision entitles them, as a matter of contract, to receive severance pay under the Separation Policy in addition to the approximately $8 Million they have already received under the Executive Agreements.

11.    The stated purpose of the Separation Policy is "to mitigate the financial hardship to which a person may be subjected when involuntary separation occurs." (Separation Policy, § VIII.) Because the Executives have already received approximately $8 Million under the Executive Agreements, they have not suffered any financial hardship as a result of their separation from the company.

12.    The Separation Policy also expressly states that it creates no "rights, financial or procedural or otherwise, on behalf of an employee." (Id., § 3(F).)

13.    In addition, the Separation Policy has always been subject to the right of the administering company to "change, modify, revise, or alter" its contents (id.), and nothing in the Executive Agreements explicitly modifies the right of the administering company to "change, modify, or alter" the contents of the Separation Policy.

14.    During the Merger negotiations between General Growth and Rouse, General Growth specifically negotiated for the continuation of the right to modify the Separation Policy as applied to Rouse executives, and, as a result, the Merger Agreement grants General Growth the continued right to modify the Separation Policy. (Merger Agreement, § 6.6(A).)

Notice of Defense
May 9, 2005
Page 4

15.     The Merger Agreement further states that "Parent shall cause the Surviving Corporation to maintain the Company's severance policy for the Company Employees (other than those Company Employees with an individual agreement providing for a severance benefit)". (Id., § 6.6(H); emphasis added.)

16.     Consistent with the foregoing, on or about November 12, 2004, the Separation Policy was amended ("Separation Policy Amendment"). The Separation Policy Amendment excludes the Executives and others similarly provided for under individual separation agreements from receiving additional payments under the Separation Policy. (Id., § 2.)

17.     In light of the foregoing, the Executives are not entitled to severance payments under the Separation Policy.

## Contributions To Company Savings Plan

18.     The Executives also claim to be entitled to contributions on their behalf to the company's qualified savings plan. Section 6.6(a)(ii) of the Executive Agreements provides that General Growth shall make contributions on the Executives' behalf to the company's excess (i.e., "non-qualified") savings plan. General Growth has made these payments. Nowhere in the Executive Agreements is a contribution to the "qualified" savings plan mentioned. Thus, the Executives are not entitled to a contribution to the qualified savings plan on their behalf.

## Medical Benefits

19.     Section 6.6(a)(iv) of the Executive Agreements entitles the Executives (and their dependents) to continue to receive medical benefits via participation in a successor company's medical plan. Section 6.6(a)(iv) provides that such medical benefits must be "not less favorable" than those available under the Rouse plan. The medical benefits available under General Growth's employee healthcare plan are substantially equivalent to those formerly available to the Executives (and their dependents) while they were employed by Rouse.

20.     Allowing only the Executives (and their dependents) -- but not other former Rouse employees (and their dependents) -- to continue to receive medical benefits under General Growth's self-administered employee healthcare plan could render General Growth's plan "discriminatory" under federal law and regulations. Thus, any benefits received by the Executives (or their dependents) could be taxed as ordinary income to the recipient. (See 26 C.F.R. § 1.105-11.)

21.     The Executives claim that the "not less favorable" clause in Section 6.6(a)(iv) of the Executive Agreements requires General Growth to cover any potential tax liability the

Notice of Defense
May 9, 2005
Page 5

Executives may incur as a result of the receipt of benefits under General Growth's employee healthcare plan. However, Section 10 of the Executive Agreements contains detailed provisions regarding company coverage of various tax liabilities incurred by the Executives as a result of payments and benefits received under the Executive Agreement; but taxes related to the receipt of medical benefits are not included in Section 10. Thus, General Growth is not liable for the payment of these amounts.

## Stock Options For "Exceptional Performance in 2004"

22.    The Executives also claim to be entitled to a pro-rata share of restricted shares and stock options as an "exceptional performance" bonus for 2004. However, the Executive Agreements contain no reference to such an entitlement. Thus, GGP is not obligated to the Executives for any such amount.

## Costs And Fees

23.    The Executives also claim that Section 9(c) of the Executive Agreements requires General Growth to reimburse them for various costs and legal fees arising out of this dispute. General Growth maintains that this provision is unenforceable under Maryland law and that it is not required to reimburse the Executives for costs and legal fees incurred as a result of this dispute. General Growth further maintains that Section 9(c) does not apply to any of the Executives's demands that do not arise under the Executive Agreements -- for example, the Executives' claims for severance pay under the Separation Policy, which are governed exclusively by ERISA -- and that, in no event is General Growth responsible for reimbursing the Executives for any costs and fees until this dispute has reached its final resolution.

## Other Benefits

24.    Finally, the Executives make various other demands under the "Other Benefits" provision of the Executive Agreements -- for example, that General Growth is obligated to continue to pay for fringe benefits (such as country club fees) that Rouse allegedly formerly made available. General Growth maintains that it is not obligated to meet these demands.

### General Growth's Counterclaim

25.    As a result of the recalculation of contributions due on the Executives' behalf to the company's non-qualified savings plan (which recalculation was performed at certain Executives' request), General Growth's contribution on Gordon Glenn's behalf resulted in an overpayment to Mr. Glenn in the amount of $4,354. General Growth demands the return of this amount, plus interest thereon.

Notice of Defense
May 9, 2005
Page 6

## Claim For Relief

General Growth intends to request that the Arbitrators enter an award in favor of General Growth and against the Executives as follows:

A.     Declaring that General Growth is not obligated to make severance payments to the Executives under the Separation Policy;

B.     Declaring that General Growth is not required to make a contribution on the Executives' behalf to the company's qualified savings plan;

C.     Declaring that General Growth is not responsible for the tax liabilities the Executives (or their dependents) may incur in participating in General Growth's employee health plan, and that General Growth's obligation to the Executives with regard to medical benefits is fulfilled by allowing the Executives (and their dependents) to participate in General Growth's employee healthcare plan;

D.     Declaring that Section 9(c) of the Executive Agreements is unenforceable under Maryland law, and does not apply to the Executives' demands to the extent they do not arise under the Executive Agreements;

E.     Declaring that the Executives are not entitled to any other residual payments or benefits under the "Other Benefits" provision of the Executive Agreements in addition to those payments and benefits General Growth has already provided to the Executives;

F.     Declaring that the Executives are not entitled to a pro rata share of restricted shares and stock options as a performance bonus for 2004;

G.     Awarding General Growth its costs and legal fees incurred as a result of this dispute;

H.     Granting General Growth an award of $4,354 against Gordon Glenn, plus pre-award interest thereon; and

I.     Granting any other such relief the Arbitrators determine to be just and proper.

\*                    \*                    \*

Notice of Defense
May 9, 2005
Page 7

Pursuant to Section 9(b) of the Executive Agreements, General Growth hereby appoints the following arbitrator from the CPR Panel of Neutrals:

>C. Allen Foster
>Greenberg Traurig, LLP
>800 Connecticut Avenue, N.W. Suite 500
>Washington, DC 20006

In the future, please direct all correspondence regarding this matter to me.

Sincerely,

Eric N. Macey

copy:   C. Allen Foster
Michael Chimitris
Vince M. Roche

# EXHIBIT B

General Growth Properties, Inc.

**Michael Chimitris**
Vice President & Associate General Counsel
Phone: (312) 960-5245
Fax: (312) 960-5993
E-mail: Michael.Chimitris@generalgrowth.com

**May 25, 2005**

Thomas P. Gies
Crowell Moring
1001 Pennsylvania Avenue, NW
Washington, DC 20004

**Re:     Conflict of Interest**

Dear Tom:

On May 10, 2005, it came to our attention that you formerly represented The Rouse Company ("TRC") prior to GGP's acquisition of TRC. We have subsequently retrieved and reviewed a number of your past invoices and discovered that you represented TRC in employment matters generally, and specifically in connection with ERISA matters and the interpretation, application and proposed or actual amendment of TRC's separations policy. You now directly represent several individuals (specifically, Gordon H. Glenn, Thomas M. Fitzpatrick, and John G. McLaughlin) making ERISA and contract claims related to their employment with TRC, and you are making claims on their behalf under the TRC separations policy.

As you know, Rule 1.9 (a) of the Rules of Professional Conduct of the District of Columbia (as well as Rule 1.9 (a) of the rules in Illinois, Florida and Maryland) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter... represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after consultation.

We have no record of your ever having consulted with us regarding this conflict of interest, let alone any record of consent. In addition, other rules exist governing a lawyer's use of client confidences, and there appears to be a high probability that your firm is using confidences or secrets gained in your former representation of TRC to our disadvantage and to the advantage of the executives. We believe these violations of the Rules of Professional Conduct trigger the consequences outlined below.

110 North Wacker Drive
Chicago, Illinois 60606
312-960-5000
fax 312-960-5475
www.generalgrowth.com

First, you and your firm must immediately cease representing any person (including Glenn, Fitzpatrick and McLaughlin) whose interests are materially adverse to us with respect to any employment or ERISA claims or claims based upon an executive agreement with TRC or based upon TRC's separations policy. Absent your firm's immediate withdrawal from representation of all of the executives, including withdrawal from representation in the pending arbitration, we will take all steps available to remedy the conflict.

Second, we ask that you immediately send us all files (including electronic files) relating to any matter in which you or your firm represented TRC or any of its affiliates.

Third, be advised that, given this conflict of interest, your clients have no right to reimbursement of fees arising from your firm's representation. Simply put, in addition to the previously-stated reasons regarding the executives' lack of entitlement to fees, we will not pay for any fees incurred in connection with representation that violated the rules of professional conduct.

We are also investigating whether your communications with, joint representation of, and provision of legal services to all of the executives and their counsel has resulted in a similar violation of the rules of professional conduct by the other lawyers involved in the executives' dispute. If so, we will proceed with imputed disqualification proceedings, and we believe this conflict of interest will also have an adverse impact on the executives' alleged right to recover fees.

Tom, if you believe you have in fact obtained the proper consent after consultation, or if you otherwise believe a conflict of interest does not exist, please contact me as soon as possible so that we can better understand what occurred.

Sincerely,

Michael Chimitris

cc:    Ronald L. Gern
       Eric Macey

## CERTIFICATE OF SERVICE

Alexander J. May, an attorney, hereby certifies that a true and correct copy of the foregoing

was filed electronically with the Court and served by the same means on all counsel of record:

> Barry E. Cohen
> Thomas P. Gies
> Rebecca L. Springer
> CROWELL & MORING, LLP
> 1001 Pennsylvania Ave., NW
> Washington, DC 20004

This 20th day of September, 2005

/s/ Alexander J. May
Alexander J. May